UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MARIAH D., )<br>      Plaintiff, )<br>)<br>   v. )<br>)<br>KILOLO KIJAKAZI, Acting Commissioner )<br>of the Social Security Administration, )<br>      Defendant. ) | CAUSE NO.: 1:20-CV-321-JVB |

**OPINION AND ORDER**

Plaintiff Mariah D. seeks judicial review of the Social Security Commissioner's decision denying her applications for child disability benefits and supplemental security income and asks this Court to reverse that decision and remand this matter to the agency for further administrative proceedings. For the reasons below, this Court grants Plaintiff's request, reverses the Administrative Law Judge's decision, and remands this matter for further administrative proceedings.

**PROCEDURAL BACKGROUND**

In Plaintiff's July 27, 2017 and August 15, 2017 applications for benefits, she alleged that she became disabled on April 6, 2007. After a July 30, 2019 hearing, the Administrative Law Judge (ALJ) issued her decision on August 29, 2019, and found that Plaintiff suffered from the severe impairment of intellectual disorder and the non-severe impairments of scoliosis and asthma. (AR 18). The ALJ determined that Plaintiff did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and further determined that Plaintiff had

> the residual functional capacity [RFC] to perform light work . . . except the claimant is limited to work that can be learned in 30 days, with simple routine tasks, simple work related decisions, and routine workplace changes.

(AR 21). The ALJ found that, in light of Plaintiff's RFC, Plaintiff was able to perform the representative occupations of hand packager, mail sorter, and housekeeper. (AR 27). Accordingly, the ALJ found Plaintiff to be not disabled from April 6, 2007, through August 29, 2019, which is the date of the ALJ's decision. This decision became final when the Appeals Council denied Plaintiff's request for review.

## STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) Whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## ANALYSIS

Though an ALJ need not mention every piece of evidence in the record, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Further, a social security claim is properly remanded if the ALJ has mischaracterized the evidence such that the necessary logical bridge between evidence and conclusion does not exist. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916-17 (7th Cir. 2003); *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). These errors infect the ALJ's analysis of Plaintiff's daily activities.

Plaintiff, who lives with her parents, testified that household chores are shared. (AR 51). She cooks, but she does not clean the kitchen; her boyfriend does the laundry; her father does the yardwork; her mother takes care of the dog. (AR 51). On a given day, Plaintiff lies down to rest for an hour once daily and sits in a reclining chair twice daily for 30 minutes to an hour due to pain. (AR 52-53).

Plaintiff's mother completed a Third Party Function Report. (AR 243-50). She described Plaintiff's functioning as follows. Plaintiff spends twenty hours per day with her mother. (AR 243). Plaintiff cares for her children, prepares meals, does a little laundry, picks up after the children, watches television, and walks the children to the park or a store if it is nearby, but though Plaintiff bathes, feeds, reads to, plays with, and cleans up after her children, she receives help in all areas of childcare, as she can no longer run, jump, play, or lift. (AR 243-44). When Plaintiff plays with her children, it is about 45 minutes per day. (AR 247). Plaintiff cooks three meals per day five days per week, but it is all "easy stuff" like macaroni and cheese, hamburgers, frozen pizza, spaghetti, ramen noodles, cereal, toast, or pop-tarts, and it usually takes her an hour to make one

of these simple meals. (AR 245). Though Plaintiff is able to pick up toys, sweep with a broom, wash dishes, do a little laundry and light cleaning, she has to take breaks in the middle of most housework, she has trouble bending and stooping, and she carries laundry in "half loads." (AR 245). She cannot push a lawnmower, and she would have trouble with the accounting side of using a checkbook. (AR 246).

In the context of step 3, the ALJ noted that Plaintiff can prepare meals, care for her children, shop of groceries, and perform some housework. (AR 20). The ALJ referred to Plaintiff's mother's report that Plaintiff "bathes, feeds, cleans up after, reads to and plays with her children," "prepares three meals a day on weekdays," "picks up toys, sweeps with a broom, washes dishes, does a little laundry, and light cleaning." (AR 20). The ALJ noted that Plaintiff testified that her boyfriend did the laundry. (AR 20). However, the ALJ's summary was not a fair statement of the evidence, as she did not mention that Plaintiff receives help in all areas of childcare, takes breaks when performing household chores, and takes about an hour to prepare a simple meal.

In the context of the RFC analysis, the ALJ reported that Plaintiff

> described a sedentary lifestyle spent mostly watching television, Yet, she explained she lives in a home with her parents and her five children ages 11 months to 9 years of age. She reported limited energy as well as attention and concentration problems. She said that she is able to shop for the family and cooks simple meals. She also reports performing some household chores, but stated she must take frequent breaks.

(AR 24). It is a mischaracterization to say that Plaintiff described her lifestyle as spent mostly watching television. As Plaintiff identifies (and the Commissioner does not rebut), there is no such description of television watching in the record. In addition to this mischaracterization, the ALJ found that Plaintiff's "testimony regarding her limitations seems inconsistent with her ability to care for five children while her parents work part time," (AR 24), which repeats the error of not acknowledging that evidence of record shows that Plaintiff receives significant help in childcare.

4

The ALJ also finds Plaintiff's testimony "inconsistent with her own ability to work part time three or more days per week, for four to five hours each day," (AR 24), but as of the hearing, Plaintiff had been working for only a month and had already sustained a workplace injury, (AR 43, 53-54), so at best the evidence is unclear whether performing this job at even this part-time schedule is within Plaintiff's abilities.

Regarding the Third Party Function Report, the ALJ noted that Plaintiff's mother "describes the claimant's home activities and reports the claimant cooks, cleans, does laundry, reads to her children, cares for her own hygiene, drives, socializes, texts, attends, church pays bills, can handle a savings account, and can count change." (AR 25). Again, the limitations on Plaintiff's abilities, such as taking a long time to prepare a simple meal, taking breaks in the middle of cleaning, doing laundry in "half loads," and having difficulty in handling a checking account, go unmentioned. Plaintiff's mother qualified Plaintiff's ability to drive, noting that riving in a lot of traffic "sets off her anxiety." (AR 246). Further, Plaintiff testified that, though she has a license, she never drives because it hurts her back to sit for long periods of time. (AR 44-45).

The ALJ purportedly relied on Plaintiff's mother's statements of Plaintiff's abilities in rejecting the opinion of consultative examiner Dr. Stephen Parker. (AR 25). Plaintiff's mother stated that Plaintiff's scoliosis and osteoporosis make lifting, squatting, bending, and standing for a long time very difficult, (AR 248); Plaintiff "can't lift probably more than 20 pounds or so," (AR 245); she can walk about one or one and a half blocks before needing to rest for about 10 minutes, (AR 248); she can pay attention for "a long time" and follows written or spoken instructions "very well," (AR 248); and she gets along well with authority figures and handles stress and changes in routine pretty well, (AR 249). Dr. Parker opined that Plaintiff could stand and walk at least 2 hours

5

in an 8 hour day and could lift or carry over 10 pounds occasionally and less than 10 pounds frequently. (AR 25).

The ALJ relied on Plaintiff's mother's statements that Plaintiff "was capable of lifting twenty pounds[] and indicated [Plaintiff] cared for her children, including bathing, feeding, cleaning up after them, reading and playing with them. (AR 25). The ALJ also accepted Plaintiff's testimony that she is the primary caregiver of her children "which would almost certainly involve lifting or carrying more than 10 pounds on a regular basis, particularly noting her mother's reports of the claimant bathing the children[] and doing laundry." (AR 25). However, Plaintiff's mother specifically said that Plaintiff receives help in all areas of childcare, in part because she cannot lift. Further, Plaintiff's mother's statement of Plaintiff's ability to lift is much more equivocal than the ALJ insinuates. Plaintiff's mother's exact words are that Plaintiff "can't lift probably more than 20 pounds or so." (AR 245). It is the ALJ's duty to resolve conflicts in the evidence, but doing so with only cherry-picked "sound bites" from the third party function report is not the proper way to do so. And, it is unclear, even under Plaintiff's mother's statement of Plaintiff's abilities, whether Plaintiff is able to walk up to 6 hours in a workday as required by light work. Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983) ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.").

Also of note is the ALJ's mention of medical records showing that Plaintiff reported doing "a great deal of lifting" in January 28, 2014 emergency department records. (AR 25, 719). The ALJ fails to mention, however, that this very lifting was a suspected cause of Plaintiff's anterior chest wall pain for which she sought emergency room treatment. (AR 719). Using this record in support of finding Plaintiff able to do significant lifting is illogical.

6

The ALJ repeatedly used Plaintiff's activities of daily living in her decision. She used it in the listing analysis, (AR 19, 20), in rejecting the medical opinions of Dr. Parker and Dr. Kepes, (AR 25), and in determining Plaintiff's RFC, (AR 24). However, the ALJ did not accurately reflect what the record says about these activities: that they are done with significant help and in ways that are generally not tolerated in the workplace and that indicate limited abilities, such as taking longer than normal to perform a task or taking breaks in the middle of tasks. In so doing, the ALJ has both cherry-picked from the record and has mischaracterized what Plaintiff and her mother reported about Plaintiff's abilities. There is no logical bridge between what the evidence says about Plaintiff's abilities and the conclusions that the ALJ tries to support with that evidence. The ALJ's decision cannot stand and must be remanded.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in the Brief in Support of Plaintiff's Complaint to Review Decision of Commissioner of Social Security Administration [DE 20], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further administrative proceedings.

SO ORDERED on March 2, 2022.

s/Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN, JUDGE  
UNITED STATES DISTRICT COURT